Thank you, your honors. My name is David Ness. I'm with the Federal Defenders of Montana. I represent the juvenile in this case, who I will refer to as Clement. I would like to reserve, if possible, two minutes for rebuttal time. Clement was approximately three or four months over the age of 14 years old when he was sentenced to incarceration in a juvenile detention facility until his 21st birthday. He was given that sentence over the recommendations of the government, the judge, as well as his current treating physicians. He was, it was uncontested, a victim of longstanding and egregious sexual abuse that had been perpetrated on him starting from the time when he was about four or five up until the time he was nine, ten, maybe eleven years old. The crimes that he committed were committed when it was unclear exactly, but probably from the time when he was 11 to about the time when he was 13 years old. At the time that he was sentenced, he was in a facility, inpatient facility designed to provide him with treatment, to send him to school, to allow him to have some social life with members of the opposite sex. The sentence that he was given, however, ensures that he will remain institutionalized, remain incarcerated during the entirety of his remaining adolescent years up until age 21 as a young adult. The court recommended that he receive treatment of at least 18 months and made specific recommendations of where the Bureau of Prisons should send him, but the court sentence didn't allow in any way for the possibility that he could rehabilitate, for the possibility that he would respond to treatment, and for the possibility that he would address and eventually resolve the problems that brought him into the juvenile system to begin with. Instead, under the sentence imposed by the court, what will happen to Clement is even assuming that he, A, number one, even gets the sex offender treatment, and two, that he comply with their recommendations and comply with his treatment options. Can I make a suggestion? Yes, sir. You're engaging in a conversational speech now. Project your voice so we can hear it. Oh, I'm sorry. OK. It's you're not carrying on a conversation with us. You're you're you're pity. OK. I apologize for that. Court reporters tell me that all the time. At any rate, at any rate, Clement, even assuming that he completes completes his programming, will be required to remain institutionalized for the additional remainder of his sentence. It's not in the record, but Mr. Clement was was not sent to the two facilities recommended by the judge. Instead, he's in a different facility that recently opened in Montana. The courts are clear, by the way, that the judge's sentence provided for a minimum of 18 months treatment, but it didn't preclude the treatment continuing beyond 18 months. Oh, that's true. Yeah. He could possibly have treatment up until the time he's 21. That's a possibility. He cooperates with it and they have the ability to give it to him. The treatment would would continue, however, in an institutionalized setting. He would never be allowed to get out so that he could participate in inpatient treatment to reintegrate with his family to reintegrate. Not until he was 21. He couldn't get it. Not until he's 20. Judge seemed to be very troubled by the idea that he had been a repeat offender with young children and that even while the court proceedings were going on, there was some indicia of recidivism. I don't know that there was any indicia of recidivism while the court proceedings were going on. I think what happened was he had improperly touched his father's girlfriend's daughter. And what was happening is, is that his his own perpetration issues came to light and it was revealed that he had been involved with improper contact or improper sexual sort of behavior with with two to three other children. OK. But it's also interesting that when when these things arose, he began with with inpatient. I'm sorry. Outpatient treatment and billings appear to be doing fairly well. But nevertheless, he was placed into the inpatient facility down at Norman Services. Well, if the judge has before him evidence that that this juvenile has abused on more than one occasion, you know, several times young children. How much how much risk is is the district court required to take for the public in in the sentencing? In other words, what why is it an abuse of why is it an abuse of discretion for the judge to view it as a serious matter and say that you need to be confined until you're 21? But you can have treatment while you're confined and to provide for that type of structured setting. What makes that an abuse of discretion? Well, it's an abuse of discretion for a couple of reasons. First and foremost, is the juvenile, the juvenile delinquency statutes in the federal system are designed to a limited institutionalization. We all recognize that that's not the best option for kids. And sometimes it has to be done, but you limit it. And two, it's an abuse of discretion because it not only went against the recommendations of the parties, but it also went against the recommendations of his treating professionals. It's an abuse of discretion because it doesn't it doesn't truly allow for his rehabilitation and for his treatment. He's going to be institutionalized where he can't integrate with the community. He can't hold down a job like a lot of kids do. He won't be able to live with this family. He's Native American, actively involved in traditional Native American practices. Won't be able to go to powwows and those sorts of things. Won't be able to interact with peers of the opposite sex. His ability to participate in any sort of meaningful adolescent life is taken away from him by this. And it was taken away from him by this. I think it's pretty clear because the judge decided that A, these crimes are serious, and B, that he needed to be institutionalized as long as possible to, in the judge's words, ensure that he didn't revert back to his prior activities. One wonders what's going to happen when Clement gets out at 21, having had no opportunity to interact with in regular society. Counsel, the Supreme Court has reversed the problems of this circuit many, many times for its abuse of discretion in deciding the case. Based upon the facts that we did not consider the totality of the circumstances. And that's an abuse of discretion by this court not to consider the totality of the circumstances. So therefore, it should be an abuse of discretion by a trial judge who didn't consider the totality of the circumstances. Right. I would agree with. All right. Now, did he consider the fact that this kid tried to commit suicide? Did he consider that it was it was in the record? He didn't say anything in his opinion, did he? No. What's in the record? Right. Did he did he consider the fact that this kid was raped 100 times before he was 14 years old? Again, it's in the record, but it's not. He didn't consider. Did he consider he did not consider all of the totality of circumstances? I think that's fair characterization. Unless there's any more questions, I think I'll reserve the remainder of my time for rebuttal. Thank you. You have about a minute left for rebuttal. Good morning. May it please the Court and counsel. I'm Marcia Hurd from the District of Montana. I was the person who originally charged this case and wrote the appellate brief. I wasn't present at the sentencing, but I'm familiar with the sentencing transcript. Why did the judge in Montana sentence a 14 year old to an institution in South Dakota, hundreds of miles away from his family? Because at the time there were no Bureau of Prisons facilities in the District of Montana. There now is one. And it's my understanding from Mr. Nassau. There's nothing in Montana? There was not at the time. To take care of 14 year old juvenile delinquents? That's correct. There is now. There has just been recently in the last place. There's no state facility? Not that the Bureau of Prisons can access. There is, however, now. Bureau of Prisons time and time again leased facilities in county jails. They do, but there's no juvenile facilities that would have been appropriate for his placement within the District of Montana. What's wrong with it? You want to punish him, but not rehabilitate him. I don't think that's accurate. I think that in this case, Judge Haddon was very clear into taking into account all of the factors about Clement that are contained within the pre-sentence report, including these facts. That he is a repeat sex offender. He has sexually abused both boys and girls who were both siblings. Extended step family siblings and children who played at his house. He greatly minimized any of his offenses. He came from a family that was rife with domestic violence and alcohol and drug use. He has a history of suicide attempts. He was a sexual abuse victim himself. He was depressed. He was addicted to pornography, engaged in voyeurism, compulsive masturbation. He reports a history of his own substance abuse, a pattern of acting out sexually. He was in school. I think what you're referring to that the judge was concerned about was that he was in school in Billings during some of the proceeding that was occurring, and he was defiant and made inappropriate, unwanted advances to a female. And that was one of the things that the judge was concerned about. And I think that, in fact, the judge did take into account the entirety of all of that. The judge did not mention the fact that the kid tried to commit suicide. That was not specifically mentioned on the record. He did not mention the fact that this kid had been raped 100 times before he was 14 years old. Well, it's not specifically mentioned within the sentencing. He did not consider the fact that when this kid was in that Montana facility, he was improving. He didn't consider that at all. I don't agree, Your Honor, with that characterization. Tell me where he says it. I didn't say that he said it. I believe that it he says within the sentencing transcript, if you look at excerpts of record page 10, there was some discussion in the beginning about the pre-sentence report. Judge Haddon indicated that he had read and reviewed the entire pre-sentence report. He even disregarded some of the allegations in the pre-sentence report that Mr. King had said he didn't agree with and that he constituted different objections that Mr. Ness had filed, and he said, I'm not going to review those. I have, in fact, however, looked at the entire pre-sentence report. He is familiar with all of that. He was accepting the findings of fact contained in the report not disputed as established for purposes of determining the appropriate sentence. So, in fact, he did say, I have read the entire pre-sentence report. I'm accepting all of those facts, including the extensive victimization of this young man by others and his suicide attempts. The difference here is the fact that the standard is an abuse of discretion. Did the district court who had the pre-sentence report, the information from normative services, which is not contained within this record, and the entire file of the lesser sentence. I'm sorry? How come you recommended a lesser sentence? One of the options of plea agreements, Your Honor, rather than taking a case to trial. He said why? He indicated that he accepted the plea agreement. But his really specific concern within this sentencing transcript was that he needed some significant help and significant lengthy treatment in a place where he couldn't just decide not to participate, as he'd done for the majority of his time at normative. And he indicated that he was also looking at the seriousness of the offense, the fact that there were other offenses within the past and the history of other types of charges that were admitted, and that he'd been given the opportunity to attempt to make progress in treatment. This young man had been in a treatment setting, outpatient within a family setting with his aunt in Billings, as recorded in the record. How did you recommend a lesser sentence? So that the child in this case would not have to go to trial. You thought it would be better for society, it would be better for the rehabilitation of the child. I thought in this case it was best that the child who was the victim would not have to proceed to trial. Okay. Which is a decision that we make in many cases so that kids don't have to get up and testify about sexual abuse. And I think Judge Haddon gave very careful consideration to the fact that this was a young man who had been in a family setting and had failed in treatment, who was in a less restrictive setting in normative and had failed for the majority of that treatment, and that he needed to be in a more restrictive setting. And I think that Judge Gould is correct. What Judge Haddon recommended was a minimum of 18 months. Get a basis. Get a start. But it didn't at all preclude the Bureau of Prisons from continuing his treatment and being able to keep him in treatment if he was going to be doing well. This is a young man who has a significant antisocial problem. He's a young man with a child. He's 14 years old. That's correct, Your Honor. That's not a young man. That's a child. He was 14 and a half years old at the time that he was sentenced. That's correct. And there were a number of children that he himself had victimized, and Judge Haddon took that into account in making the decision in this case, which was not an abuse of his discretion. He did not indicate any intent during any of this sentencing that he was planning to just lock him up and throw away the key, as the allegation is. In fact, his biggest concern was extended treatment, and the judge was very clear about that. He did not say, Clement, you are a waste of breathing space and I'm throwing you away. He said, I want you to be able to have access to treatment for your own issues as well as for your perpetration issues. And I don't believe in any fashion that that is an abuse of the judge's discretion. In this case, the recommendation was that he was going to be placed in South Dakota. And as we've discussed, although it's not on the record, there was no facility in Montana at the time. There is now in a facility that does offer sex offender treatment for Native American young men. This sentence is very common in terms of placement outside of the state of Montana. At the time, the Bureau of Prisons has to look at the contracts that it has and place children where they can. We do not agree with the defense's argument that treatment is the only goal of the Juvenile Delinquency Act. That may have been the goal at one point, but I think it's clear now under the Sentencing Reform Act of 1984 that you don't only look just at rehabilitation, but you also look at the interests of society as well. And this is a young man who had sexually abused a number of children and was a considerable danger to the community. His family, from what is fairly clear on the record, was unable to police or monitor those activities. He was then placed by social services with an aunt, continued to have concerns, then was placed at normative and continued to have concerns there. He did not commit any crime during the time when he was in that rehabilitative facility in Montana? He was never in a rehabilitative facility in Montana. He was living with an aunt in Billings. Oh, there he was. And he was in outpatient sex offender treatment. He never committed a crime at all during that time? In fact, he was improving, wasn't he? No, because they ended up sending him from outpatient treatment to inpatient treatment at normative. In fact, the school noted that he had poor school attendance. He was disruptive, argumentative, cut class. He fought, damaged school property, was defiant and inappropriate, unwanted sexual advances to a female. So there were some significant concerns about his being able to be managed in the community, even within a foster care environment with his aunt, while he was in outpatient treatment. Isn't the crux of this that I'm looking at July 24 transcript of the sentencing hearing and that at least whether I would have thought the same thing or not, that the district court concluded that he needed to have treatment in a structured environment for an extensive period of time in light of the full record that he reviewed, which I won't repeat here. Absolutely. But that was the district court's sense of this, that outpatient treatment wasn't going to work. That's correct. Like towards the end, you know, he says, you have a real and even profound need for continued treatment that will succeed only if you cooperate with it and only if you're placed in an environment where that treatment will be seen by you as a positive opportunity. Yes. And I have determined that can only be accomplished if you are assured of being in a structured environment that will not permit you to have the choice of seeking to return to your prior activities. That's correct. Now, if a judge takes that position, is there any law about whether that, you know, when is that an abuse of discretion? I thought. Obviously, he is keeping him in, wants him institutionalized to the maximum extent provided by law. That's correct. I found no cases in our circuit that deal explicitly with that. No, Your Honor. None that I could find that indicated that a sentence such as this was an abuse of discretion taking into account all of the facts in this case, which are very egregious. When you look at the pre-sentence report and the report from normative services in this, this Clement's history, he was profoundly in need of treatment. And the judge very carefully looked at all the facts within the pre-sentence report, his history, his own victimization and his victimization of a number of other children and made that determination. And there is no abuse of discretion cases that I could find that indicate that that would be a problem. The judge also said here, this is at page 21 of this transcript, that he's looked at some report about normative, from normative services. Is that the outpatient treatment? That's the inpatient treatment program in Wyoming that he was in from March until the date of sentencing. He did very poorly in there for the period of time almost up until sentencing at the end of June and in July. He had resisted the efforts and resisted them rather consistently. And at that point, the treatment people indicated that, in fact, he had not made any progress in that facility. He was having significant problems as reported in the pre-sentence report. And the judge here says that the professional people where you have been under treatment for this extended period of time report very candidly that you are a serious risk of return to this kind of behavior if you were placed back in a situation where you could, again, undertake to engage in it. Exactly. In those types of circumstances, I mean, how are we supposed to deal with that? You're going to give the other side additional time? Yeah, I will. I'll add, because I've taken you over. We'll add time back. Well, and in this case. Finish the answer to that. Well, and I think the answer is that you have to review what the judge looked at, the totality of what he looked at. Did he abuse his discretion in applying the law to the facts of this case? And you do not have anything but the cold record in front of you. And Judge Haddon was very careful in reviewing the pre-sentence report and in setting forth his why it was that he was concerned about this young man and this young man's future, as well as the future of society. And I think that it would be an abuse of this Court's discretion to reverse that, because this judge had, in fact, in front of him the entire record, considered very carefully the entire record, and felt it in this young man's best interests and for protection of society to get him the treatment that he needed and that nobody else had been able to give him. Okay. Well, thank you. Thank you. Mr. Ness, we took Ms. Hurd over her time by a little under two minutes. So you had reserved a minute. We'll add two minutes to your time. So you've got three minutes. Thank you. The district court, Judge Gould, as you indicated, said during the sentencing hearing that the professional people where he'd been under treatment stated that he was a risk and that he hadn't participated adequately in the treatment programming down there. It's interesting to note that he went into this treatment program, I think, towards the end of March, and by June he was beginning to make progress. And, in fact, they said that he was at that point attending all of his treatment programs. He was starting to digest and take on the rules of the program that he was in. And, finally, and I think one of the most important things is, is that they never said that this treatment program isn't working for him. In fact, they said the opposite. He's making progress. And as a final recommendation to the court, they recommended that he stay at normative services, that he continue with his treatment at normative services, and that he be given a prospective discharge date as the fall of 2003. When you actually read their reports to the court that are in the record, the judge refers to them, they don't say it explicitly, I'll admit, but I think implicitly in there is that the type of resistance that they encountered with Clement is something that they would expect, that they would expect an initial resistance, and for it to take a little while for the treatment programming to begin working. I mean, we're dealing with, everyone here will acknowledge, a very, very troubled young man based upon what happened to him. Troubled people often act out in inappropriate ways, and that's what Clement did. And when you look at the United States Supreme Court cases, and there's really no cases directly on point, but when they talk about juveniles, when they talk about our treatment of juveniles, they say that institutionalization should be a last resort, and that it should not extend any longer than necessary. And there is nothing in this record that indicates that the entire seven years is necessary for this kid to stay in an institutionalized environment in order for his treatment. Nothing. The judge was very clear about his reasons for the sentence. The judge said the reasons include the seriousness of the offense, the fact that he had other offenses in his past, the fact that he had been given an opportunity to make progress with treatment and he had done very little to take advantage of that, and I think that that's erroneous based upon the reports that were given, and that he had a need for treatment. One gets the sense here that the judge's reasoning are reasons taken directly out of the adult statutes and ignore the rehabilitative thrust of the juvenile delinquency statutes. This Court has said, and this is a quotation that's oft repeated, but it comes after the 1984 Sentencing Reform Act, says the purpose of federal juvenile delinquency proceedings is to remove juveniles from the ordinary criminal process in order to avoid the stigma of a prior criminal conviction and to encourage treatment and rehabilitation. That's the primary thrust of the juvenile delinquency statutes. And this sentence, under the facts of this case, do not comport with that mission. Thank you for your argument. We've used up our time. It's a very interesting case. The case shall be submitted.
judges: Lay (8th Cir.), Ferguson, Gould